UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DEBORAH BLASUCCI,                                        :
                                                        :      16-CV-08908
                                    Plaintiff,          :
                                                        :
              - against -                               :      **COMPLAINT AND**
                                                        :      **JURY DEMAND**
BMP MEDIA HOLDINGS, LLC,                                 :
INTERVIEW, INC., PETER M. BRANT and                      :
KELLY BRANT,                                             :
                                                        :
                                    Defendants.          :
-----------------------------------------------------------------x

        Plaintiff Deborah Blasucci, by her attorneys, Schaeffer Venaglia Handler &

Fitzsimmons, LLP, for her Complaint in this action, alleges as follows:

                              **NATURE OF THE ACTION**

        1.      For more than 30 years, plaintiff Deborah Blasucci was a trusted and

indispensable employee of the multititle magazine publishing enterprise owned and

controlled by the mogul and art collector Peter M. Brant.  The enterprise is comprised of

several integrated companies, including Brant Publications, Inc. ("BPI") and its subsidiaries,

BMP Media Holdings, LLC ("BMP") and Interview, Inc. ("Interview") (collectively, the "Brant

Companies").   During her lengthy tenure, Ms. Blasucci assumed a number of critical

business and financial positions with the Brant Companies:   President, Executive Vice

President, Chief Operating Officer, Chief Financial Officer, Manager, Secretary and

Treasurer.

        2.      However, on or around July 26, 2016, without any warning whatsoever,

counsel for one of the Brant Companies, BPI, sent Ms. Blasucci a letter (the "Termination

Letter"), advising her that, because of a disability, her employment had been terminated as

of April 8, 2016, pursuant to the terms of her employment agreement with BPI (the

"Employment Agreement").  BPI is largely a holding company, and the Termination Letter constituted a termination of Ms. Blasucci's employment with each of the Brant Companies. According to the Termination Letter, the Brant Companies discharged Ms. Blasucci because she had failed to "render services" to her employer for 45 consecutive days due to a "disability".  In reality, the Brant Companies' basis for discharging Ms. Blasucci was demonstrably false, unlawful and in violation of her Employment Agreement.

3.      The Brant Companies did <u>not</u> terminate Ms. Blasucci's employment based on a good faith determination, in accordance with her Employment Agreement and the law, that she was properly subject to discharge due to a disability.  Instead, this was a preemptive strike, intended to deprive Ms. Blasucci of the substantial severance pay and other compensation to which she was expressly entitled under her Employment Agreement in the event she was discharged "without cause" -- a job benefit she had counted on since signing her Employment Agreement 23 years earlier.  It was also a conspicuous move to punish Ms. Blasucci for taking a medical leave, even though she worked continuously throughout that leave in order to keep the Brant Companies operational.

4.      Ms. Blasucci now brings this action to right the grievous financial and emotional harm that has been done to her.  She asserts claims against defendants BMP, Interview, Peter M. Brant and Mr. Brant's daughter Kelly Brant, who was Ms. Blasucci's direct supervisor.[1]  As set forth below, this case involves the rare instance where an

---

[1]  Ms. Blasucci's Employment Agreement with BPI contains an arbitration provision, and accordingly, Ms. Blasucci has commenced an arbitration against BPI concerning her discharge from the Brant Companies.  Defendants BMP and Interview have refused to participate in that arbitration.

2

employer <u>expressly admits in writing</u> that it unlawfully discharged its employee: (a) because of her disability, and (b) because she took a federally protected medical leave. Defendant engaged in this misconduct even as that employee (Ms. Blasucci) continued to perform her duties, through pain and discomfort, both ably and consistently.

5.      Because Peter M. Brant owns and controls the enterprise that illegally fired Ms. Blasucci, and because Kelly Brant was Ms. Blasucci's direct supervisor and engaged in the decision to fire her, they both are personally liable under the New York State and New York City Human Rights Laws outlawing discrimination based on a disability, as well as under the federal Family Medical Leave Act ("FMLA").

6.      Ms. Blasucci also asserts claims in this action against the defendants for tortious interference with contract because, by improperly discharging her and withholding payments due her, they caused a plain violation of Ms. Blasucci's Employment Agreement with BPI.  In addition, based on the well documented deceitful and pernicious conduct of Kelly Brant, BMP and Interview toward Ms. Blasucci in connection with her discharge, Ms. Blasucci asserts claims against those defendants for fraud, negligent misrepresentation and intentional infliction of emotional distress.

## THE PARTIES

7.      Plaintiff Deborah Blasucci is a resident of the town of Colts Neck in the State of New Jersey.  Until on or about August 1, 2016, Ms. Blasucci was an officer, Manager and/or employee of BPI, BMP and Interview.

8.      On information and belief, defendant BMP is a limited liability company organized under the laws of the State of Delaware and is a wholly owned subsidiary of BPI.

3

BMP has its principal place of business at 110 Greene Street, Suite 201, New York, New York 10012. BMP publishes the magazines, *Art In America, The Magazine Antique, Modern Magazine,* and *ARTnews.*

9.      On information and belief, defendant Interview is a corporation organized under the laws of the State of Delaware and is wholly owned by BMP. Interview has its principal place of business at 110 Greene Street, Suite 201, New York, New York 10012. Interview publishes *Interview* magazine.

10.     On information and belief, defendant Peter M. Brant is a resident of the town of Greenwich in the State of Connecticut. Mr. Brant is the owner, Chairman and President of BPI, a Manager of BMP and Chairman of Interview.

11.     On information and belief, defendant Kelly Brant is a resident of the City of New York in the State of New York. Kelly Brant is the President of Interview and formerly was the Managing Director of Interview.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over plaintiff's FMLA claims pursuant to 28 U.S.C. § 1331, and over plaintiff's remaining claims pursuant to 28 U.S.C. § 1367(a).

13.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). The plaintiffs and defendants are of diverse citizenship, and the amount in controversy in this action exceeds $75,000.

14.     Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and (2). Defendants BMP and Interview reside in this District and a substantial part of the events giving rise to plaintiff's claims occurred in this District.

209488

## FACTUAL BACKGROUND

A.   **Ms. Blasucci's Rights Under Her Employment Agreement.**

15.     On or around August 16, 1993, Ms. Blasucci entered into the Employment Agreement with BPI.  By its terms, Ms. Blasucci's Employment Agreement provides (at Para. 3) that it "shall commence on the date hereof and shall continue until terminated pursuant to Paragraph 8 below."

16.     Although the parties to the Employment Agreement were technically Ms. Blasucci and BPI, it was both the intention and the practice of the parties for the Employment Agreement to set Ms. Blasucci's terms of employment for the Brant multititle magazine publishing enterprise as a whole and for Ms. Blasucci to serve as a key officer and employee of each of the Brant Companies.  For example, the Employment Agreement (at Para. 2) provides that Ms. Blasucci shall serve as Chief Financial Officer with respect to *Interview* magazine, which is published by Interview, and *Art In America*, which is published by BMP.

17.     Consistent with her employment arrangement with the Brant magazine publishing enterprise as established by her Employment Agreement, Ms. Blasucci performed financial and accounting functions for all three Brant Companies, which directly and indirectly published the magazines: *Interview; Art In America; The Magazine Antiques; Modern Magazine; and ARTnews*.  In addition, Ms. Blasucci was an authorized officer of Interview and BPI; was a Manager of BMP; and was paid her compensation by BMP for the work she performed for all of the Brant companies.  The Brant Companies all operate at a single location at 110 Greene Street in New York City.

5

209488

18.     The Employment Agreement (at Para. 8) provided for termination of Ms. Blasucci's employment in three circumstances: termination based on "disability"; termination "for cause"; and termination "without cause".

19.     In the event that Ms. Blasucci's employment was terminated "without cause", she was entitled to a significant package of severance benefits. Paragraph 9.3 of the Employment Agreement provides that, in the event she is discharged without cause, Ms. Blasucci:

> shall be entitled to receive, as severance pay, a lump sum equal to your current salary and minimum bonus (as set forth in Paragraph 4 above) for one year at the level in effect as of the effective date of such termination (including additional amounts due, if any, under any bonus or similar arrangements then in effect).

20.     Ms. Blasucci's Employment Agreement (at Para. 7.3) also entitled her, upon termination of her employment on any basis, to receive compensation for unused vacation time and paid holidays based on her current rate of pay. Section 7.3 provides:

> Vacation time or paid holidays not actually taken by you may be carried over from year to year. In the event of termination hereunder, we shall pay you for any unused vacation time or unpaid holidays, at a daily rate determined by pro-rating the total of your then-current base salary and your minimum annual bonus.

21.     In addition to her salary, Ms. Blasucci's compensation included the Brant Companies' agreement, made in or before January 2012, to pay the rent for Ms. Blasucci's apartment in New York City. Ms. Blasucci signed the lease for this apartment in her personal capacity with the Brant Companies' knowledge and in reliance on the Brant Companies' agreement to pay the rent, confirmed by her then supervisor Ryan Brant, who

6

209488

was Managing Director of Interview at that time.  The lease for Ms. Blasucci's apartment was originally to be signed by BMP or Interview, but neither company could pass the building's required credit check.

22.     Thereafter, for four years and eight months, in accordance with their agreement, the Brant Companies regularly paid the rent for Ms. Blasucci's apartment through ACH transfers, reported on their financial statements as salary to Ms. Blasucci, and issued a Form 1099 confirming that the rent constituted compensation to Ms. Blasucci.

23.     Under her Employment Agreement, Ms. Blasucci was entitled to a significant severance package based on her current compensation if her employment was terminated without cause.  Yet, beginning in late 2015, the Brant Companies -- through Kelly Brant, her brother Christopher Brant, and others at the Brant Companies -- made clear to Ms. Blasucci that they wanted to terminate her employment for budgetary reasons but had no intention of providing her with the severance pay to which she was expressly entitled.  Kelly, Christopher and Ryan Brant each told Ms. Blasucci in separate conversations that their father, Peter M. Brant, thought she made too much money.

24.     Despite these unseemly pressure tactics, Ms. Blasucci stood by her contractual rights and continued diligently to perform her duties as the Brant Companies' COO, CFO, Manager and employee.  Indeed, the Brant Companies could not have continued to operate adequately without her.

209488

B.    **Ms. Blasucci's Disability.**

25.    On February 11, 2016, Ms. Blasucci, with notice to and the consent of the Brant Companies, went out on medical leave in order to undergo spinal surgery to remove hardware from an earlier lumbar fusion procedure.

26.    As a result of this surgery, Ms. Blasucci experienced chronic pain, severely restricted mobility, and a lack of flexibility and range of motion.

27.    In addition, in connection with her surgery, Ms. Blasucci experienced several serious medical complications: (a) dural tear and spinal column leakage; (b) deep vein thrombosis; (c) multiple pulmonary embolisms caused by a blood clot; (d) atrial fibrillation caused by the stress of surgical complications (e) severe and chronic headaches; and (f) difficulty sleeping.

28.    As a result of her spinal surgery and related complications, Ms. Blasucci suffered (and continues to suffer) a range of physical, mental and medical impairments, including without limitation, restricted mobility, the need for extended bed rest, continuing body pain, sporadic dizziness, nausea and shortness of breath, chest pains and rapid heart rate. Ms. Blasucci also has experienced severe anxiety, depression and difficulty sleeping.

29.    Notwithstanding the foregoing impairments, Ms. Blasucci was able, upon reasonable accommodations, to perform the activities involved in her positions with the Brant Companies. In later discharging Ms. Blasucci, however, defendants chose to ignore her performance of these activities completely.

209488

C.   **Ms. Blasucci's Continuing and Capable Work Performance While On Medical Leave In Accordance With Her Employment Agreement.**

30.     Immediately following her surgery on February 11, 2016, Ms. Blasucci resumed her job duties for the Brant Companies, including from her hospital bed the day after surgery.  Although she was unable to be physically present at the Brant Companies' offices due to her medical condition and the complications related to her surgery, Ms. Blasucci continued to perform her duties regularly and capably from her apartment throughout her period of medical leave.

31.     The Brant Companies would later claim in their Termination Letter that Ms. Blasucci failed to "render services" to her employer after her surgery.  This is false.  A nonexclusive list of those duties performed by Ms. Blasucci from both hospital and home in the period after February 11, 2016, includes the following:

- Preparation of daily cash flow reports;
- Preparation of quarterly cash flow projections;
- Monthly review and revision of financial statements;
- Review and approval of payroll on a twice monthly basis;
- Review and approval of expenditures for all purchase orders;
- Preparation of an employment agreement for a new Chief Revenue Officer;
- Regular cooperation with, and providing information to, the Brant Companies' attorneys in connection with a litigation brought by a former sales representative for unpaid commissions;
- Daily communication with her staff members (accounting, advertising, production, circulation, human resources, office services);
- Negotiations, over the course of months, in hiring an Associate Publisher for Interview magazine;
- Dealing with Capital One Bank on overdrafts;

9

209488

- Telephone conversations with the President of Interview magazine and his attorney concerning his resignation, payment of expenses and bonus;

- Negotiation of a management arrangement for leased office space; and

- Negotiation and execution of a significant contract between Interview and Cesanamedia.

32.    Ms. Blasucci performed these and other duties with the full knowledge of, and frequently at the specific direction of, the Brant Companies, including her direct report, Kelly Brant.  It is beyond peradventure that Ms. Blasucci performed her job duties from hospital and home consistently after February 11, 2016, without any notable hiatus in her regular work performance.

33.    Moreover, throughout this period, the Brant Companies maintained Ms. Blasucci's status as a corporate officer and authorized signatory on Company bank accounts.  They also provided her with continued access to her Company email account, Company cell phone account and remote access to the office computer system -- all for purposes of performing her work duties for the Brant Companies away from the office.  In addition, on a daily basis, an employee of the Brant Companies would deliver business mail and work to Ms. Blasucci at her apartment and pick up work from Ms. Blasucci for delivery back to the Brant Companies.

34.    Neither Kelly Brant nor Peter M. Brant, or anyone else at the Brant Companies, ever complained to Ms. Blasucci about her working from home, although they were well aware of this arrangement.  There was no reason to: Ms. Blasucci performed her essential duties as the Brant Companies' COO, CFO, Manager and employee as she always had: responsibly and professionally.

209488

**D.   The Unlawful Termination Of Ms. Blasucci's**
**Employment Based On A Disability.**

35.   At some point during Ms. Blasucci's medical leave, Kelly Brant and others at the Brant Companies made the decision to fire Ms. Blasucci based on a disability and because she had taken medical leave, while withholding from her the severance benefits to which she was entitled under her Employment Agreement if she were discharged "without cause".  Accordingly, in late July 2016, without warning, counsel for BPI sent the Termination Letter to Ms. Blasucci.  On information and belief, Peter M. Brant, who controls the Brant Companies, approved the decision by Kelly Brant and others to discharge Ms. Blasucci.

36.   The Termination Letter declared:  "On February 18, 2016 you went out on paid sick leave and have not returned to active employment since that time.  Accordingly, your employment by virtue of Section 8.1 [termination based on "disability"] of your [Employment] Agreement terminated as of April 8, 2016."  This Termination Letter went on to advise Ms. Blasucci that, because she was being terminated "by reason of disability", she was "entitled to a further continuation of [her] base salary until October 9, 2016."  The letter also advised her that -- notwithstanding her medication condition -- her Company sponsored health insurance "shall terminate as of August 31, 2016."

37.   The Termination Letter purports to invoke Section 8.1 of the Employment Agreement in order to effect a termination of Ms. Blasucci's employment due to a "disability".  Section 8.1 of the Employment Agreement reads in full:

> 8.1.   Your engagement shall terminate immediately in the event of your "disability", i.e., your inability due to illness, accident or physical or mental incapacity to render services for

209488

<u>a period in excess of forty-five (45) consecutive days or
ninety (90) nonconsecutive days during any twelve (12) month
period during the term thereof</u>; [emphasis added]

38.     Although the Termination Letter was signed by counsel for BPI as the
signatory to the Employment Agreement, both BMP and Interview, as part of this
integrated enterprise, also terminated their employment relationships with Ms. Blasucci in
conjunction with the Termination Letter.  Accordingly, all work performed by Ms. Blasucci
for BMP and Interview came to an end.  BMP and Interview, as well as BPI, terminated
Ms. Blasucci's access to Company email, cell phone and computer system.  As warned in the
Termination Letter, as of October 8, 2016, Ms. Blasucci received no further salary from
BMP, which had regularly paid her salary in consideration for her work for all of the Brant
Companies.

39.     Among its many other flaws, the Termination Letter is based on a
fundamental falsehood:   that Ms. Blasucci failed to "render services" to the Brant
Companies for 45 consecutive days beginning on February 18, 2016.  It is well documented
that Ms. Blasucci continuously "render[ed] services" to the Brant Companies after
February 11, 2016 (the actual date she went out on medical leave) and through the date of
her receipt of the Termination Letter.  She did not fail "to render services" to the Brant
Companies for 45 consecutive days, or for 90 nonconsecutive days in a twelve month
period.

40.     As noted, the Brant Companies were obliged to pay Ms. Blasucci's rent for her
apartment in New York City.  Twisting the knife even further, at Kelly Brant's direction the
Brant Companies stopped paying the rent on Ms. Blasucci's apartment after sending the

12

Termination Letter, and reversed the rent payments they already had made by ACH transfer for the months of September and October 2016, leaving Ms. Blasucci with significant personal liability and forcing her to move out of the apartment without notice, notwithstanding her continuing medical problems.

41.    In addition, Ms. Blasucci had 75.5 unused vacation days at the time of her termination.  Pursuant to Paragraph 7.3 of her Employment Agreement, she was entitled, upon termination (regardless of the grounds), to payment for all such unused vacation time at the rate of her base salary at the time of termination.  At Kelly Brant's direction, the Brant Companies have refused without explanation to pay Ms. Blasucci for any of this accrued and unused vacation, which totals approximately $130,000.

**E.    Defendants Deceived Ms. Blasucci Into Working Throughout Her Medical Hardships, Even Though They Had Already Terminated Ms. Blasucci's Employment.**

42.    Amazingly, the Termination Letter asserts that Ms. Blasucci's employment "terminated as of <u>April 8, 2016</u>."  [emphasis added]  Yet neither Kelly Brant nor anyone else at the Brant Companies advised Ms. Blasucci, until sending out the <u>July 26, 2016</u> Termination Letter (received by Ms. Blasucci on or after <u>July 30, 2016</u>), that her employment with the Brant Companies purportedly had terminated back on April 8, 2016. For months after that declared termination date, Ms. Blasucci continued to render services for the Brant Companies, notwithstanding the medical problems she was encountering, and Kelly Brant continued to direct Ms. Blasucci to perform her job duties at the Brant Companies.

43.    Notably, Kelly Brant and the Brant Companies did not tell their employees, including those who reported directly to Ms. Blasucci, that she had been discharged as of

13

April 8, 2016.  Thus, those employees continued to communicate with Ms. Blasucci and continued to take direction from her.  Inexplicably, even after sending Ms. Blasucci the Termination Letter, Kelly Brant and the Brant Companies still did not inform their employees that Ms. Blasucci had been discharged.  As a result, for several days after receiving the Termination letter, Ms. Blasucci continued to receive inquiries from her former staff seeking direction in performing their job duties.

44.    In addition, after discharging Ms. Blasucci, the Brant Companies continued to list her on each *Interview* magazine issue as Interview's COO and CFO.  Whether this unauthorized use of Ms. Blasucci's name was the result of negligence by the Brant Companies, an intent to trade off Ms. Blasucci's good name notwithstanding her discharge, or for some other purpose, remains to be determined.

45.    This duplicitous conduct is all the more disturbing since Kelly Brant directed Ms. Blasucci to continue performing job duties for the Brant Companies (after her undisclosed discharge date) even though she knew that Ms. Blasucci was performing these critical tasks in a compromised medical state, while experiencing extreme pain, discomfort, depression and anxiety.  For example, as late as June 13, 2016 -- two months after the alleged effective date of Ms. Blasucci's discharge -- Kelly Brant asked Ms. Blasucci to perform certain job functions at the very time she learned that Ms. Blasucci was experiencing cardiac problems and making plans to visit a cardiologist.  Kelly Brant emailed Ms. Blasucci that she was "so sorry to hear that", but she did not rescind her direction that Ms. Blasucci perform certain duties, and she surely did not disclose to Ms. Blasucci that her job had terminated two months previously, or that she had actively plotted to terminate Ms. Blasucci's employment.

209488

46.   A week earlier, on June 7, 2016, Ms. Blasucci and Kelly Brant exchanged emails concerning cash availability at BMP and Ms. Blasucci's management of cash allocation.   During this exchange, Ms. Blasucci advised Kelly Brant, "I'm just okay, I have terrible pain from my back wrapping around to my hip and down my leg.  My health issues are making me rather depressed, I don't like being so restricted with what I can and cannot do."  Ms. Brant responded, "Ugh, I'm so sorry to hear that."  Yet Ms. Brant did not rescind her directions for Ms. Blasucci to manage cash allocation and -- notwithstanding the agony Ms. Blasucci suffered while performing her job duties -- Kelly Brant did not bother telling Ms. Blasucci that she already had terminated her employment, or was actively plotting to terminate her employment, effective two months earlier.

47.   According to the defendant's own theory of the case, there was no reason whatsoever for Ms. Blasucci to perform any work for the Brant Companies after April 8, 2016.  Under her Employment Agreement (at Para. 9.2), upon termination based on disability, Ms. Blasucci was entitled "to receive [her] base salary for an aggregate of six (6) months following the date of termination".

48.   By deceiving Ms. Blasucci into performing her job duties after her purported April 8, 2016, termination date, defendants managed to obtain the benefit of Ms. Blasucci's work and expertise free of charge.  Even if she had been properly terminated as of April 8, 2016 -- and she was not -- Ms. Blasucci would have been entitled to six months base salary, without being required to work under false pretenses.

49.   That Kelly Brant and the Brant Companies did not have -- and knew that they did not have -- the expertise, experience or personnel to replace Ms. Blasucci, gave them

209488

the motive and intent to deceive Ms. Blasucci into working essentially salary free and to steal the value of her services.

**F.   Defendants Are Guilty Of Disability**
     **Discrimination And Violation Of The FMLA.**

50.   Critically, Section 8.1 of the Employment Agreement, which provides for discharge based on disability, is unenforceable as a matter of law.  In purporting to grant an employer the right to discharge an employee based vaguely on the failure to "render services" (which are undefined in the Employment Agreement) for a specified time period, this provision violates the fundamental protections provided by the governing federal, state and local disability discrimination and medical leave statutes.  As a matter of law, these statutory protections cannot be prospectively waived by an employee such as Ms. Blasucci.  In any event, as described above, Ms. Blasucci was not subject to termination based on the plain terms of that provision.

51.   This is the extraordinary case where the employers have announced -- unequivocally and in writing -- that they intentionally and unlawfully discharged their employee (Ms. Blasucci) based solely on her disability and her taking of a medical leave. The Termination Letter -- as factually erroneous and ill-advised as it is -- stands as a <u>direct admission by the Brant Companies and Kelly and Peter M. Brant that they committed employment discrimination based on Ms. Blasucci's disability and that they violated the FMLA.</u>

209488

## FIRST CAUSE OF ACTION

(Disability Discrimination Under The New York
State Human Rights Law Against BMP and Interview)

52.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 51 of this Complaint, as though fully set forth herein.

53.     As of February 11, 2016, Ms. Blasucci suffered from a disability, and accordingly, is a member of a protected class under the New York State Human Rights Law.

54.     BMP and Interview each has in excess of 15 employees.   The Brant Companies' integrated magazine publishing organization as a whole has in excess of 15 employees.

55.     Defendants BMP and Interview discharged Ms. Blasucci from her employment with those Companies notwithstanding that, upon the provision of reasonable accommodations, her disability did not prevent her from performing in a reasonable manner the activities involved in her position with the Brant Companies.

56.     The termination of Ms. Blasucci's employment by BMP and Interview occurred under circumstances giving rise to an inference of unlawful termination.

57.     Indeed, by virtue of the admissions contained in the Termination Letter, which effected the discharge of Ms. Blasucci from all of the Brant Companies, BMP and Interview have expressly admitted that they unlawfully terminated Ms. Blasucci's employment based on a disability without regard to her continued performance of the activities involved in her position.

58.     By reason of the foregoing, BMP and Interview have violated Section 296(1)(a) of the New York State Human Rights Law.

209488

## SECOND CAUSE OF ACTION

(Disability Discrimination Under The New York State
Human Rights Law Against Peter M. Brant and Kelly Brant)

59.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 58 of this Complaint, as though fully set forth herein.

60.     On information and belief, Peter M. Brant is the owner of the Brant Companies' magazine publishing business.  Peter M. Brant is the owner, Chairman and President of BPI, Manager of BMP, Chairman of Interview and holds direct and/or indirect ownership interests in BMP and Interview.

61.     On information and belief, Peter M. Brant exercises full control over the Brant Companies' multititle magazine publishing enterprise.

62.     Peter M. Brant, in his capacity as owner, Chairman, President, Manager and the individual in control of the Brant Companies, has the power to do more than simply carry out personnel decisions made by others.

63.     On information and belief, Peter M. Brant engaged in and approved the unlawful termination of Ms. Blasucci's employment based on a disability.

64.     Accordingly, Peter M. Brant is an "employer" under Section 296 of the New York State Human Rights Law.

65.     Kelly Brant is President and formerly was Managing Director of Interview and was the direct supervisor of Ms. Blasucci.

18

209488

66.     In such capacity, Kelly Brant had the power to do more than carry out personnel decisions made by others, and indeed, had the power to hire and fire employees, including Ms. Blasucci.

67.     Kelly Brant made the decision, alone or with others, to unlawfully terminate Ms. Blasucci's employment based on her disability.

68.     By reason of the foregoing, Peter M. Brant and Kelly Brant are personally liable for violating Section 296(1)(a) of the New York State Human Rights Law as a result of the termination of Ms. Blasucci's employment with the Brant Companies based on a disability.

### THIRD CAUSE OF ACTION

(Aiding and Abetting Disability
Discrimination Under The New York
State Human Rights Law Against Kelly Brant)

69.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 68 of this Complaint, as though fully set forth herein.

70.     Kelly Brant is President and was formerly Managing Director of Interview and was the direct supervisor of Ms. Blasucci.

71.     In such capacity, Kelly Brant actively participated in the decision to unlawfully terminate Ms. Blasucci's employment with the Brant Companies based on a disability.  On information and belief, Kelly Brant was the prime mover in determining to discharge Ms. Blasucci based on her disability, including for purposes of the Brant Companies avoiding payment to Ms. Blasucci of severance benefits and other compensation to which she was contractually entitled upon her termination.

19

72.     By reason of the foregoing, Kelly Brant aided and abetted the unlawful discharge of Ms. Blasucci with the Brant Companies based on a disability in violation of Section 296(6) of the New York State Human Rights Law.

**FOURTH CAUSE OF ACTION**

(Disability Discrimination Under The New York
City Human Rights Law Against BMP and Interview)

73.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 72 of this Complaint, as though fully set forth herein.

74.     As of February 11, 2016, Ms. Blasucci suffered from a disability, and accordingly, is a member of a protected class under the New York City Human Rights Law.

75.     Defendants BMP and Interview discharged Ms. Blasucci from her employment with those Companies notwithstanding that, upon the provision of reasonable accommodations, her disability did not prevent her from performing in a reasonable manner the activities involved in her position with the Brant Companies.

76.     The termination of Ms. Blasucci's employment by BMP and Interview occurred under circumstances giving rise to an inference of unlawful termination.

77.     Indeed, by virtue of the admissions contained in the Termination Letter, which effected the discharge of Ms. Blasucci from all Brant Companies, BMP and Interview have expressly admitted that they unlawfully terminated Ms. Blasucci's employment based on a disability without regard to her continued performance of the activities involved in her position.

78.     By reason of the foregoing, BMP and Interview have violated Section 8-107(1)(a) of the New York City Human Rights Law.

209488

### FIFTH CAUSE OF ACTION

(Disability Discrimination Under The New York City
Human Rights Against Peter M. Brant and Kelly Brant)

79.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 78 of this Complaint, as though fully set forth herein.

80.     On information and belief, Peter M. Brant is the owner of the integrated Brant Companies' multititle magazine publishing business.   Peter M. Brant is the owner, Chairman and President of BPI, Manager of BMP, Chairman of Interview and holds direct and/or indirect ownership interests in BMP and Interview.

81.     On information and belief, Peter M. Brant exercises full control over the Brant Companies' multititle magazine publishing enterprise.

82.     Peter M. Brant, in his capacity as owner, Chairman, President, Manager and the individual in control of the Brant Companies, has the power to do more than simply carry out personnel decisions made by others.

83.     On information and belief, Peter M. Brant engaged in and approved the unlawful termination of Ms. Blasucci's employment based on a disability.

84.     Accordingly, Peter M. Brant is an "employer" under Section 8-107(1)(a) of the New York City Administrative Code.

85.     Kelly Brant is the President and was formerly Managing Director of Interview and was the direct supervisor of Ms. Blasucci.

209488

86.    In such capacity, Kelly Brant had the power to do more than carry out personnel decisions made by others, and indeed, had the power to hire and fire employees, including Ms. Blasucci.

87.    Kelly Brant made the decision, alone or with others, to unlawfully terminate Ms. Blasucci's employment based on her disability.

88.    By reason of the foregoing, Peter M. Brant and Kelly Brant are personally liable for violating Section 8-107(1)(a) of the New York City Administrative Code as a result of the termination of Ms. Blasucci's employment with the Brant Companies based on a disability.

**SIXTH CAUSE OF ACTION**

(Aiding and Abetting Disability
Discrimination Under The New York
City Human Rights Law Against Kelly Brant)

89.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 88 of this Complaint, as though fully set forth herein.

90.    Kelly Brant is the President and was formerly Managing Director of Interview, and in that capacity was the direct supervisor of Ms. Blasucci.

91.    In such capacity, Kelly Brant actively participated in the decision to terminate Ms. Blasucci's employment with the Brant Companies based on a disability.  On information and belief, Kelly Brant was the prime mover in determining to discharge Ms. Blasucci based on her disability, including for purposes of the Brant Companies avoiding payment to Ms. Blasucci of severance benefits and other compensation to which she was contractually entitled upon her termination.

22

92.    By reason of the foregoing, Kelly Brant aided and abetted the unlawful discharge of Ms. Blasucci with the Brant Companies based on a disability in violation of Section 8-107(6) of the New York City Administrative Code.

### SEVENTH CAUSE OF ACTION
(Violations of The FMLA Against All Defendants)

93.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 92 of this Complaint, as though fully set forth herein.

94.    In taking a medical leave from her employment with the Brant Companies, Ms. Blasucci exercised rights protected under the FMLA.  Defendants have taken the position in their Termination Letter that, during the period of her leave, Ms. Blasucci suffered from an "inability to render services" due to a "disability".  Defendants terminated Ms. Blasucci's employment based on this determination.

95.    As alleged above, Ms. Blasucci was qualified for those positions she held with the Brant Companies.

96.    Ms. Blasucci provided notice to the Brant Companies of her intention to take FMLA leave.

97.    Ms. Blasucci suffered adverse employment actions as a result of her exercise of FMLA rights, including without limitation the termination of her employment, the Brant Companies' refusal to provide her with severance pay and other benefits to which she was entitled, and the Brant Companies' deceitful and willful disregard of Ms. Blasucci's work performance while she was on medical leave.

209488

98.    The adverse employment actions imposed by the Brant Companies occurred under circumstances giving rise to an inference of retaliatory intent.  Such circumstances include without limitations the Termination Letter, which expressly states that the Brant Companies terminated Ms. Blasucci's employment because she took medical leave.

99.    The Brant Companies, including BMP, Interview and BMP's operating subsidiaries, engage in commerce and constitute a single integrated employer for purposes of the FMLA, in accordance with 29 C.F.R. § 825.104(c).  That employer has in excess of 50 employees.

100.    Peter M. Brant and Kelly Brant are individually liable for the Brant Companies' violation of the FMLA.  Peter M. Brant owns and controls the Brant Companies' magazine publishing business.  Both Peter M. Brant and Kelly Brant acted directly or indirectly in the Brant Companies' interest to the Brant Companies' employees.

101.    By reason of the foregoing, all defendants are liable for the interference with and restraint of Ms. Blasucci's rights under the FMLA in violation of 29 U.S.C. § 2615(a)(1).

102.    In the alternative, all defendants are liable for FMLA discrimination and retaliation against Ms. Blasucci in violation of 29 U.S.C. § 2615(a)(2).

### EIGHTH CAUSE OF ACTION

(Tortious Interference With
Contract Against All Defendants)

103.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 102 of this Complaint, as though fully set forth herein.

104.    Ms. Blasucci and BPI are parties to the Employment Agreement, which is a valid contract with respect to Ms. Blasucci's employment with the Brant Companies.

24

209488

105.   Defendants had knowledge of the Employment Agreement.

106.   As set forth above, defendants took steps to intentionally procure the breach of the Employment Agreement by BPI.

107.   As a result of the conduct of defendants, BPI actually breached the Employment Agreement, including by improperly terminating the Employment Agreement purportedly based on a disability; failing to pay Ms. Blasucci severance benefits based on her discharge without cause; failing to pay Ms. Blasucci her accrued vacation and holiday pay; and failing to pay the rent for Ms. Blasucci's New York City apartment.

108.   By reason of the foregoing, Ms. Blasucci has suffered damages in an amount to be determined at trial, but not less than $1,000,000.

### NINTH CAUSE OF ACTION
(Fraud Against Kelly Brant, BMP and Interview)

109.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 108 of this Complaint, as though fully set forth herein.

110.   As Managing Director and Ms. Blasucci's direct report, Kelly Brant made the decision, or participated in the decision, on behalf of the Brant Companies to terminate Ms. Blasucci's employment effective April 8, 2016, as confirmed in the Termination Letter.

111.   Notwithstanding the Brant Companies' and Kelly Brant's knowledge that Ms. Blasucci's employment with the Brant Companies was terminated effective April 8, 2016, they concealed that material fact from Ms. Blasucci.

112.   Kelly Brant and the Brant Companies acted with scienter. After Ms. Blasucci's termination date of April 8, 2016, Kelly Brant and the Brant Companies continued to direct

25

Ms. Blasucci to perform her work duties from her home or from the hospital. At the time they directed Ms. Blasucci to perform her work duties after April 8, 2016, Kelly Brant and the Brant Companies knew that Ms. Blasucci was performing her work duties while suffering extreme pain and discomfort caused by complications from spinal surgery she had undergone in February 2016.

113.    From the period April 8, 2016 to at least July 30, 2016, Kelly Brant and the Brant Companies misrepresented to Ms. Blasucci her true employment status with the Brant Companies, and concealed from Ms. Blasucci, and those employees who reported to Ms. Blasucci, that her employment had terminated as of April 8, 2016. Kelly Brant and the Brant Companies did so for the purpose of receiving the continued benefit of Ms. Blasucci's work and expertise at no cost to the Brant Companies. They also did so to compensate for, and keep hidden, their own lack of expertise and personnel necessary to effectively replace Ms. Blasucci.

114.    Ms. Blasucci relied on Kelly Brant's and the Brant Companies' material misrepresentations, and their concealment of material facts, to her detriment, including by continuing to perform services to the Brant Companies, while in pain and discomfort, and effectively without compensation.

### TENTH CAUSE OF ACTION

(Negligent Misrepresentation
Against Kelly Brant, BMP and Interview)

115.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 114 of this Complaint, as though fully set forth herein.

209488

116.    In her capacity as Managing Director and Ms. Blasucci's direct report, Kelly Brant was uniquely in possession of information concerning, inter alia, Ms. Blasucci's employment status, and Ms. Blasucci relied on Kelly Brant's possession of such information. The Brant Companies possessed the same information with respect to Ms. Blasucci's employment status as did Kelly Brant.  Accordingly, Kelly Brant and the Brant Companies owed a duty to Ms. Blasucci to disclose material facts concerning her employment status, particularly facts that would enable Ms. Blasucci to determine whether she was obliged to perform services for the Brant Companies while suffering medical hardships, and to determine whether she was receiving adequate compensation for her efforts.

117.    Kelly Brant and the Brant Companies failed to disclose to Ms. Blasucci, and those employees who reported to Ms. Blasucci, the material fact that she and the Brant Companies deemed Ms. Blasucci's employment to have terminated on April 8, 2016.

118.    By reason of the foregoing, Kelly Brant and the Brant Companies violated their duty of reasonable care and disclosure to Ms. Blasucci and are liable to Ms. Blasucci for negligent misrepresentation.

## ELEVENTH CAUSE OF ACTION
(Intentional Infliction of Emotional
Distress Against Kelly Brant, BMP and Interview)

119.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 118 of this Complaint, as though fully set forth herein.

120.    Kelly Brant, BMP and Interview continuously directed Ms. Blasucci to perform her job duties, knowing that Ms. Blasucci performed such duties while suffering extreme pain, discomfort, anxiety and depression.  Kelly Brant, BMP and Interview directed

27

209488

Ms. Blasucci to perform such job duties after April 8, 2016, even though they intentionally caused Ms. Blasucci's employment to have terminated as of that date, and/or were actively plotting to terminate her employment.

121.    Kelly Brant, BMP and Interview directed Ms. Blasucci to perform her job duties until on or after July 30, 2016, with knowledge that Ms. Blasucci performed such job duties while experiencing extreme pain and discomfort due to complications resulting from spinal surgery, and with knowledge that Ms. Blasucci had been deceived into performing these job duties without compensation for the benefit of Kelly Brant and the Brant Companies.

122.    Exacerbating the harm they caused Ms. Blasucci, after delivery of the Termination Letter, Kelly Brant and the Brant Companies have taken the false position that Ms. Blasucci performed no job duties whatsoever for the Brant Companies after taking medical leave in February 2016.

123.    Kelly Brant, BMP and Interview caused the Brant Companies to violate their obligation to pay Ms. Blasucci's rent for her apartment, thereby exposing Ms. Blasucci to individual liability, and more egregiously, forcing her to move out of her apartment while in a seriously compromised medical and emotional state.

124.    The conduct of Kelly Brant, BMP and Interview toward Ms. Blasucci was extreme and outrageous.

125.    Kelly Brant, BMP and Interview engaged in misconduct with respect to Ms. Blasucci's employment, and the termination of that employment, with the intent to

209488

cause, or to disregard the substantial probability of causing, severe emotional distress to Ms. Blasucci.

126.    Such conduct by Kelly Brant, BMP and Interview in fact caused Ms. Blasucci to suffer severe emotional distress.

WHEREFORE, Plaintiff demands judgment against the defendants as follows:

1.    On the First, Second, Third, Fourth, Fifth, Sixth and Eighth Causes of Action against all Defendants:

    (a)    granting damages in an amount to be determined at trial, but not less than $1,000,000;

    (b)    granting punitive damages in an amount to be determined at trial, but not less than $1,000,000; and

    (c)    granting an award of costs and attorney's fees.

2.    On the Seventh Cause of Action against all Defendants:

    (a)    granting damages in an amount to be determined at trial, but not less than $825,000;

    (b)    granting statutory interest under the FMLA;

    (c)    granting liquidated damages in an amount equal to the award granted in accordance with (a) and (b) above; and

    (d)    granting reasonable attorneys' fees and costs.

3.    On the Ninth and Tenth Causes of Action against Kelly Brant, BMP and Interview:

    (a)    granting damages in an amount to be determined at trial, but not less than $300,000; and

29

209488

(b)   granting punitive damages in an amount to be determined at trial but, not less than $300,000.

4.   On the Eleventh Cause of Action against Kelly Brant, BMP and Interview:

(a)   granting damages in an amount to be determined at trial, but not less than $1,000,000; and

(b)   granting punitive damages in an amount to be determined at trial, but not less than $1,000,000.

5.   Granting such other and further relief as to the Court seems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff demands trial by jury in this action of all issues so triable.

Dated:   New York, New York
November 16, 2016

SCHAEFFER VENAGLIA HANDLER & FITZSIMMONS, LLP

Bruce Handler (BH 9426)

1001 Avenue of the Americas, 10th Floor
New York, New York  10018
Phone:  (212) 508-9372
E-mail:  handler@svhflaw.com

*Attorneys for Claimant Deborah Blasucci*

209488